UNITED STATES *v.* ARNOLD BERNSTEIN STEAMSHIP Co. (No. 4043)[1]

United States Court of Customs and Patent Appeals, May 3, 1937

*Joseph R. Jackson*, Assistant Attorney General (*Charles D. Lawrence*, Special Assistant to the Attorney General, and *William Whynman*, special attorney, of counsel), for the United States.

*Allan R. Brown* (*Fred J. Carter* of counsel) for appellee.

[Oral argument February 8, 1937, by Mr. Lawrence and Mr. Carter]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, Second Division.

Merchandise, described by the appraiser in answer to the protest as automobile maps, was assessed for duty by the collector at the port of New York, at 25 per centum ad valorem as "maps" under paragraph 1410 of the Tariff Act of 1930.

The importer protested claiming, among other things, that the merchandise was not dutiable as assessed by the collector, but was properly dutiable at only 15 per centum ad valorem under paragraph 1410, *supra*, as printed matter of bona fide foreign authorship.

The pertinent parts of the paragraph in question read:

PAR. 1410. Unbound books of all kinds, bound books of all kinds except those bound wholly or in part in leather, sheets or printed pages of books bound wholly or in part in leather, pamphlets, music in books or sheets, and printed matter, all the foregoing not specially provided for, if of bona fide foreign authorship, 15 per centum ad valorem; * * * blank books, slate books, drawings, engravings, photographs, etchings, maps, and charts, 25 per centum ad valorem * * *.

[1] T. D. 48979.

The cause was submitted to the trial court on two stipulations entered into by counsel for the parties, the pertinent parts of which read, respectively, as follows:

1. That the merchandise the subject of this protest consists of certain printed matter in the form of automobile road maps which was assessed for duty at 25% ad val. under Par. 1410, Tariff Act of 1930.

2. That the sample accompanying this stipulation correctly represents the merchandise assessed for duty at 25% ad val. under Par. 1410, Tariff Act of 1930.

3. That the sample may be received in evidence and marked "Exhibit 1."

\* \* \* \* \* \* \*

1. That the printed matter contained in Exhibit 1 was written by an individual not a citizen of the United States.

2. That the protest may be submitted on this stipulation and thirty days allowed plaintiff for brief and thirty days allowed defendant for brief after plaintiff's brief is filed.

Exhibit 1, which is representative of the involved merchandise, consists of a map of Europe, and four folders, each denominated an "auto-pilot," to be used in conjunction therewith. The map shows the countries, the various important cities, rivers, etc., and what appears to be main highways in several of the countries, and, in the upper left-hand corner, has the following notation printed thereon: "Reference map for Arnold Bernstein Lines 'Auto-Pilots.' Use the 'Auto-Pilot' indicated by the Figures." (The figures referred to, so far as the issues here involved are concerned, relate to auto-pilots Nos. 1, 2, 3, and 4, which correspond with the routes so marked on the reference map. The automobile routes are more detailed on the auto-pilots than on the reference map.) Auto-pilot No. 1 is illustrative of auto-pilots Nos. 2, 3, and 4. On it appears a scale showing the distance in kilometers and in miles between the various cities and towns indicated thereon, a marginal note of the "Rule of the Road" in France, and brief marginal notes of matters of interest in some of the cities and towns; for example, relative to the city Le Havre, appears the following statement:

LE HAVRE.

One of the chief sea-ports of France. The town and harbour are protected by fortifications. The Saint-Francois and Notre-Dame Churches of the 15th and 17th century—various museums—important cotton market. Wonderful view from St. Adresse—sea-bathing.

The second marginal note relates to the city Harfleur. It reads:

HARFLEUR.

Various important industries—several interesting houses of the 16th century—castle of the 17th, Saint-Martin Church of the 15th to 16th century.

In its opinion, sustaining the protest in part, and overruling it in part, the trial court said:

On the evidence we hold the map separately dutiable at the rate of 25 per centum ad valorem under the eo nomine provision therefor under said paragraph

1410. The printed matter we hold to be properly dutiable at but 15 per centum ad valorem under said paragraph as printed matter of bona fide foreign authorship, as alleged by the plaintiff.

The Government appealed from that part of the judgment of the trial court holding the so-called "auto-pilots" to be dutiable under the provisions of paragraph 1410, *supra*, for printed matter of bona fide foreign authorship, and here contends that the court erred in not holding the merchandise to be entireties, and, as such, dutiable as "maps" under that paragraph, as assessed by the collector.

As we understand the briefs and oral argument of counsel for appellee, it is not denied that the merchandise was properly assessed as an entirety. Counsel contend, however, that the entirety is dutiable as printed matter of bona fide foreign authorship, rather than as "maps," as held by the collector.

It is clear from the record and the briefs that the map of Europe and the so-called "auto-pilots" are imported together, and are designed to be used together.

We may say at the outset that, in view of the stipulations in the case, the printed matter on the margin of the "auto-pilots" is not only susceptible of authorship, but, in our opinion, is of bona fide foreign authorship, as claimed by counsel for appellee.

Counsel for the Government contend that the trial court had no authority to segregate the maps of Europe from the "auto-pilots" for dutiable purposes, because, it is contended, appellee's protest did not make any such claim.

The question of the sufficiency of the protest to raise the issue of entireties was not raised in the Government's assignment of errors.

In view of the fact that counsel for both parties have presented the case to this court upon the theory that the merchandise should have been assessed as an entirety, the question as to the sufficiency of the protest to raise the issue of segregability need not here be determined.

It is the contention of counsel for appellee that the merchandise represented by Exhibit 1 is something more than maps, and that, while there is an accompanying map, the merchandise is "no more a map than an encyclopaedia containing a map could be called a map." Counsel for appellee also contend that, although the printed matter on the margin of the "auto-pilots" is not as "detailed in" its "literary character as some of the exhibits" in the case of *United States* v. *American Railway Express Co. et al.*, 17 C. C. P. A. (Customs) 10, T. D. 43317, the "auto-pilots" here involved "are much better exemplars than Exhibit No. 6 [involved in that case], 'Hotels and Boarding Houses', which was in its nature a list of hotels and boarding houses with prices", and which this court held was dutiable as printed matter of bona fide foreign authorship under paragraph 1310 of the Tariff Act of 1922.

In the case of *United States* v. *American Railway Express Co. et al.*, *supra*, this court, with reference to Illustrative Exhibit 6, referred to by counsel for appellee, stated:

It is said that some of these exhibits, notably illustrative Exhibit No. 6, Hotels and Boarding Houses, is nothing but a compilation, and is not the work of an author. The testimony shows, as to this particular exhibit, that the person preparing it was obliged to investigate throughout the Canadian Provinces, and to obtain, in any way he could, information as to the various hotels and boarding houses and camps, and was required to arrange the same so that the information might be accessible. In addition, many tabulated statements of other matters of information to the traveler are contained in this pamphlet, which includes 80 pages of closely printed informative material. We are aware of no definition of authorship which would exclude a work such as this. To do so would exclude many valuable scientific publications, works on mathematics, digests, travelers' guides, and similar works, which, although to a considerable degree compilations, are, nevertheless, works which require authorship.

It will be observed that Illustrative Exhibit 6 in that case included "80 pages of closely printed informative matter."

It is clear, we think, that the decision in the *American Railway Express Co. et al.*, case, *supra*, is authority only for holding that the explanatory notes on the margin of the involved "auto-pilots" are susceptible of foreign authorship, and has no other relevancy to the issues in the instant case.

It will be noted that the stipulations in the case at bar specifically refer to the printed matter or explanatory notes on the margins of the "auto-pilots" as being in "the form of automobile road maps," and state that "the printed matter contained in Exhibit 1 was written by an individual not a citizen of the United States."

We construe the stipulations and the briefs of counsel for appellee as raising the question of whether the explanatory printed matter on the margin of the "auto-pilots" is sufficient to give the merchandise such character as to bring it within the provisions for printed matter of bona fide foreign authorship, contained in paragraph 1410, *supra*.

A "map" is defined by the lexicographers as—

1. A representation (usually on a flat surface) of the surface of the earth, or of some portion of it, showing the relative size and position, according to some given scale or projection, of the parts represented; also, such a representation of the celestial sphere, or of some part of it. * * *

2. Anything suggestive of, or representing like, a map; * * * a detailed but condensed representation or account; a picture, image, embodiment, or epitome. [Webster's New International Dictionary.]

1. A representation, usually a plane projection, of any region or expanse; a chart; specif., a delineation of land or land and water, showing the extent and relative position of geographical features, and conveying topographic or other information. * * *

2. Figuratively, any exact delineation or representation. [Funk & Wagnalls New Standard Dictionary.]

24

We know of no definition of a map which would exclude explanatory printed matter. In fact, most maps do have some such printed matter.

No question has been raised as to the accuracy of any of the matters contained in Exhibit 1.

The involved "auto-pilots" show but little of the surrounding country through which the automobile routes pass, and the traveler must refer to the "reference map" for information relative thereto. It would seem, therefore, that if it were not for the "reference map," the "auto-pilots" would be of little, if any, use to the motorist.

We are unable to hold that the descriptive matter of the character, purpose, and extent of that appearing on the margin of the "auto-pilots" is sufficient to warrant a holding that the "reference maps" and "auto-pilots," as entireties, are dutiable as printed matter of bona fide foreign authorship. In other words, the merchandise can not be said to be printed matter of bona fide foreign authorship containing explanatory maps, as in the case of *United States* v. *American Express Co. et al.*, *supra*, where it appeared that in some of the exhibits the maps were merely explanatory and incidental to the printed matter.

In the case at bar, the printed matter, although, of course, of some importance, is merely incidental and explanatory of matters of interest in some of the cities and towns named on the "auto-pilots." That is to say, it is to the involved merchandise what the maps were to the printed matter in some of the exhibits in *United States* v. *American Express Co. et al.*, *supra*. Accordingly, even if it be assumed that the collector erroneously classified the merchandise as "maps," appellee has failed to establish that its claim as to its dutiable status is right.

We are of opinion, therefore, that the trial court erred in holding the so-called "auto-pilots" dutiable as printed matter of bona fide foreign authorship. Accordingly, the judgment, so far as it relates to the "auto-pilots," is *reversed*.